UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LIBERTY CASH BRILEY, | ) | Civ. 12-4169-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| DOUG WEBER, Warden, | ) | MOTION FOR SUMMARY |
| South Dakota State Prison; and | ) | JUDGMENT |
| ROBERT DOOLEY, Warden, | ) | |
| Mike Durfee State Prison, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Liberty Cash Briley, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. On October 2, 2012, Briley filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth Amendment by failing to protect him from an inmate with Hepatitis C and by failing to provide necessary medical care. Docket 1. After screening Briley's complaint pursuant to 28 U.S.C. § 1915, the court directed service on both counts. Docket 6. Nonetheless, on July 30, 2013, with the assistance of appointed counsel, Briley filed an amended complaint, wherein he reiterated the allegations set forth in his original complaint but removed two defendants, each of whom the court had dismissed in an order dated January 29, 2013. Dockets 22, 36. On September 16, 2013, in addition to answering the amended complaint, defendants moved for summary judgment. Dockets 39, 40. Briley responded in

opposition to the motion for summary judgment on October 7, 2013, and the defendants replied on October 18, 2013. Dockets 49, 53. After considering the arguments of the parties, the court grants defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Viewed in a light most favorable to Briley, the nonmoving party, the facts are as follows:

Briley is an inmate in the custody of the South Dakota Department of Corrections (SDDOC). At the commencement of this lawsuit, Briley was incarcerated at Mike Durfee State Prison in Springfield, South Dakota. Dockets 42 at ¶ 1; 48 at ¶ 1. He was paroled, however, on March 25, 2013. Dockets 42 at ¶ 2; 48 at ¶ 2. When he returned to custody on September 10, 2013, he was placed in the South Dakota State Penitentiary in Sioux Falls, South Dakota, where he currently resides. Dockets 42 at ¶ 2; 48 at ¶ 2.

While in the custody of the SDDOC, Briley has been seen by various medical professionals with regard to Hepatitis C. According to his medical records, Briley first requested Hepatitis C testing on June 13, 2012. Docket 46-1 at 1. Briley requested the same on June 19, 2012, and he eventually received such testing on June 26, 2012, on which date Briley tested positive for

Hepatitis C.[1] Dockets 42 at ¶ 56; 46-1 at 5, 11; 48 at ¶ 56. On July 6, 2012, Correctional Health Services performed laboratory testing on Briley's liver and found that his liver enzymes were normal. Dockets 42 at ¶ 66; 48 at ¶ 66.

Briley initiated chronic care for his Hepatitis C on July 19, 2012.[2] Dockets 42 at ¶ 68; 46-1 at 12; 48 at ¶ 68. At that same appointment, Dr. Hanvey ordered Hepatitis C viral load and genotype, advised Briley to contact Correctional Health Services if he experienced any problems, and educated Briley about the motor transmission symptoms of Hepatitis C, as well as the potential treatment options going forward. Dockets 42 at ¶ 70; 46-1 at 12; 48 at ¶ 70. Dr. Hanvey also informed Briley that he did not qualify for Hepatitis C drug therapy treatment because his liver enzymes were not elevated and because Briley would be released from prison within seven months and would thus be unable to finish the treatment.[3] Dockets 42 at ¶ 71; 48 at ¶ 71.

---

[1] Briley was tested previously for Hepatitis B and C on May 7, 2010. Dockets 42 at ¶ 52; 46-1 at 4; 48 at ¶ 52. On that date, he tested positive for Hepatitis B, but negative for Hepatitis C. Dockets 42 at ¶ 52; 46-1 at 4; 48 at ¶ 52.

[2] Under the chronic care plan, Correctional Health Services would check Briley's liver enzyme levels every six months. Dockets 42 at ¶ 69; 46-1 at 12; 48 at ¶ 69.

[3] The South Dakota Department of Health Correctional Health Services has created a Hepatitis C eligibility checklist to determine who is eligible for and would benefit from a liver biopsy and subsequent drug therapy treatment. Dockets 42 at ¶ 58; 48 at ¶ 58. The treatment plan involves the injection of Interferon under the skin three times a week and can cause fatigue, aching, headaches, loss of appetite, weight loss, difficulty sleeping, anxiety, irritability, depression, and lowered white blood cell and platelet counts. Dockets 42 at

Other considerations that factored into Briley's ineligibility for drug therapy treatment were the fact that he was being treated for mental health conditions and would thus need approval from his psychiatrist, he had a history of substance abuse, and he had a history of noncompliance with psychiatric medications. Dockets 42 at ¶ 75; 48 at ¶ 75.

On July 23, 2012, Briley filed an informal resolution request[4] seeking treatment for his Hepatitis C. Docket 45-2 at 1. In the same submission, Briley addressed issues he had with his living arrangement while incarcerated at

---

¶ 59; 46 at ¶ 14; 48 at ¶ 59. The plan also requires patients to take Ribavirin twice a day, which could cause anemia, skin rash, itching, shortness of breath, cough, sore throat, nasal congestion, stomach pain, and loss of appetite. Dockets 42 at ¶ 60; 46 at ¶ 15; 48 at ¶ 60. The drug therapy must be provided continuously for forty-eight weeks and involves frequent blood tests. Dockets 42 at ¶ 61; 46 at ¶ 16; 48 at ¶ 61. After the treatment is completed, follow-up is also necessary. Dockets 42 at ¶ 61; 46 at ¶ 16; 48 at ¶ 61. Because the side effects of drug therapy treatment can be severe and cause death, and because there is no guarantee that treatment will eliminate the Hepatitis C virus or prevent cirrhosis or liver cancer, the Department of Health's policy is to offer treatment only if: (1) the inmate has progressive permanent liver disease present on a liver biopsy; (2) the inmate has time remaining to be served greater than the usual treatment and follow-up period (usually 18 months); (3) the inmate is drug and alcohol free; and (4) the inmate has no other medical conditions (including recent or serious mental illnesses) that are contraindicated. Dockets 42 at ¶¶ 61–63; 46 at ¶¶ 10, 12, 16; 48 at ¶ 61–63.

[4] The administrative remedy policy implemented by the DOC and followed by MDSP and SDSP requires that an inmate follow a two-step process to address concerns about the application of any administrative directive, policy, or unit rule or procedure. Dockets 42 at ¶ 12; 45 at ¶ 4; 48 at ¶ 12. First, the inmate must file an informal resolution request. Docket 45-1 at 4. "If the inmate is not satisfied with the informal resolution to their issue, complaint or appeal," the inmate must then submit a request for formal resolution using the Request for Administrative Remedy form. *Id.*

SDSP in 2011.[5] Dockets 42 at ¶ 13; 45-2 at 1; 48 at ¶ 13. On January 31, 2011, Briley was placed in cell N-002. Docket 45-5. According to SDSP transfer records, inmate S.S. was placed in cell N-002 on March 23, 2011, at which point Briley and S.S. became cell mates.[6] Dockets 45-4; 45-5. Briley and S.S. were both transferred to cell S-023 on April 14, 2011. Dockets 45-4; 45-5. On April 27, 2011, however, S.S. was transferred to the infirmary, and records indicate that the two inmates never shared a cell again. Dockets 42 at ¶ 33; 45-4; 45-5. S.S. died on June 15, 2011, from renal disease secondary to Hepatitis C. Dockets 42 at ¶ 92; 48 at ¶ 92. In his informal resolution request, Briley alleged that he was required to take care of S.S. and "clean up after him" while the two shared a cell at SDSP. Docket 45-2 at 1. Briley claims that he contracted hepatitis—a disease from which S.S. eventually died—while living with and caring for S.S. *Id.*

---

[5] Housing assignments at SDSP are made by unit managers in accordance with DOC policies and SDSP operational memoranda, and with the occasional involvement of special security. Dockets 42 at ¶ 29; 45 at ¶ 7; 48 at ¶ 29.

[6] Briley represents that, prior to S.S.'s placement in cell N-002, "Warden Weber personally spoke with Briley and asked him if it would be alright [sic] if S.S. moved in with him." Dockets 48 at ¶ 30; 50 at ¶ 8. "Briley accepted Warden Weber's request to live with S.S. and assist him." Dockets 48 at ¶ 31; 50 at ¶ 11. Warden Weber, however, denies ordering or deciding that Briley and S.S. would be celled together, and he does "not recall asking Briley to care for S.S. or any another [sic] inmate at any time during his incarceration at the South Dakota State Penitentiary." Docket 45 at ¶¶ 8, 17. Defendants assert that Unit Manager Clifton Fantroy assigned Briley to cell N-002 after Briley requested the move. Dockets 42 at ¶ 31; 43 at ¶ 4; 45 at ¶ 8.

The following day, July 24, 2012, Briley filed an additional informal resolution request on the matter, this time taking issue with the fact that he had not been "provided the information and tools nessesary [sic] to protect [him]self while living with another inmate who had a contagious disease." Docket 45-2 at 2. Briley was apparently unaware of S.S.'s condition until weeks after S.S.'s death. *Id.* at 1. To remedy the issue, Briley requested compensation for past and future harm and expenses. *Id.* at 2.

In response to Briley's July 23, 2012, resolution request, a member of Briley's unit staff contacted Correctional Health Services to discuss Briley's request for treatment. Dockets 42 at ¶ 14; 48 at ¶ 14. After this discussion, Briley was told that he would "receive treatment based on protocol set up by medical." Docket 45-2 at 1. Briley was also told that whether he qualified for treatment would depend on the results of blood tests. *Id.* If Briley had any further questions, he was advised to direct them to medical staff at designated times. *Id.* With regard to the July 24, 2012, request, prison staff noted that Briley had been "educated by the PA on 7-19-12 on how [Hepatitis C] is transmitted[,]" and that his request could not otherwise be resolved "at this level."[7] *Id.* at 2.

---

[7] Prison staff also noted that Briley told health services that he wanted the hepatitis test done "because of his prison tattoos," and that Briley never mentioned to health services that he had come into contact with infected bodily fluids. Docket 42 at ¶ 16. Briley contests these assertions. More specifically, Briley claims that he "told health services that he had prison tattoos in order to

On July 31, 2012, Briley filed a request for administrative remedy regarding his Hepatitis treatment.[8] Dockets 42 at ¶ 18; 45-2 at 3; 48 at ¶ 18. More specifically, Briley's request communicated his belief that withholding treatment due to his short sentence was not "the proper way to handle this matter." Docket 45-2 at 3. Warden Robert Dooley responded to Briley's request for administrative remedy on August 24, 2012, and informed Briley that he would "be scheduled with Dr. Wallinga in the next few weeks to discuss [his] medical condition." Docket 45-2 at 4.

Prior to receiving a response from Warden Dooley, however, Briley sent a kite to the Division of Correctional Behavioral Health to request that his medications be restarted. Docket 46-1 at 16. Further, Briley communicated that he was "stressed about the Hepititis [sic] C stuff" and that his roommate was acting differently, possibly due to a lack of knowledge about Briley's

---

obtain testing for Hepatitis." Docket 48 at ¶ 16. "Through Briley's experience as an inmate at the prison, he believed that he would not receive testing unless it was determined that he had a risk factor that would qualify him for the test." *Id.*; Docket 50 at ¶ 14. "Briley knew that having a prison tattoo was a qualifying risk factor." Dockets 42 at ¶ 16; 50 at ¶ 14. Briley also claims that after testing positive for Hepatitis, he told health services that he contracted Hepatitis from his former roommate, S.S. Dockets 42 at ¶ 17; 50 at ¶ 16.

[8] There is no evidence in the record to establish that Briley filed a request for administrative remedy with regard to his previous cell assignment with S.S. Defendants maintain that Briley failed to make such filing and therefore failed to exhaust his administrative remedies. In contesting this assertion, Briley claims that he "alerted prison officials that he was exposed to Hepatitis and contracted the disease due to his rooming with an infected individual." Dockets 42 at ¶ 24; 45 at ¶ 6; 48 at ¶ 24.

condition. *Id.* Accordingly, Briley was scheduled to see Dr. Wallinga on August 16, 2012. Dockets 42 at ¶ 73; 48 at ¶ 73. During the appointment, Briley asked questions about his Hepatitis C and informed Dr. Wallinga that he had cared for an inmate who had severe Hepatitis C, but that there was no known blood exposure. Dockets 42 at ¶ 73; 48 at ¶ 73. Dr. Wallinga gave Briley information about Hepatitis C and recommended that Briley schedule follow-up appointments every four to six months upon discharge from incarceration. Dockets 42 at ¶ 74; 46-1 at 17; 48 at ¶ 74. Dr. Wallinga also informed Briley that his liver enzymes were normal, as were his previous liver function tests. Dockets 42 at ¶ 74; 46-1 at 17; 48 at ¶ 74.

As is relevant to this action, Briley does not contest defendants' assertion that neither Warden Weber nor Warden Dooley had any direct contact with Briley about his medical care. Dockets 42 at ¶ 77; 48 at ¶ 77. Briley does not dispute that defendants "were not personally involved in his care, did not discuss his care or medications with his treating physicians, and did not interfere in any way with the ability of medical personnel to exercise and implement their own medical judgment on how best to treat Briley." Dockets 42 at ¶ 77; 44 at ¶ 7; 45 at ¶ 22; 48 at ¶ 77.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the evidence,[9] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg, Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

---

[9] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Defendants assert that they are entitled to summary judgment on both of Briley's § 1983 claims because Briley failed to exhaust administrative remedies and otherwise stated claims upon which relief cannot be granted. Docket 41. In Briley's first claim, he alleges that defendants failed to protect him from contracting Hepatitis C. Docket 36. In his second claim, Briley alleges that

defendants acted with deliberate indifference toward his serious medical need by denying him medical treatment for his Hepatitis C. *Id.* The court will consider each cause of action in turn.

## I.     Defendants Are Entitled to Summary Judgment on Briley's Failure to Protect Claim.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although this statute explicitly refers to "prison conditions," the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). It is undisputed that the exhaustion requirements at both SDSP and MDSP involve a two-step process for addressing concerns about the application of any administrative directive, policy, or unit rule or procedure. Dockets 42 at ¶ 12; 45 at ¶ 4; 48 at ¶ 12. As previously noted, the inmate must first file an informal resolution request. Docket 45-1 at 4. If the inmate is dissatisfied with the informal resolution, the inmate must then submit a request for administrative remedy. *Id.*

In the instant case, defendants assert that Briley did not exhaust administrative remedies with regard to his failure to protect claim. Docket 42 at ¶¶ 17–18. Although Briley filed an informal resolution request regarding prior cell assignments and the alleged lack of medical treatment, his administrative remedy request only addressed his medical treatment. Docket 45-2 at 1–3. The request for administrative remedy states as follows: "Dr. Hanvey told me I would not receive [sic] treatment because I had to [sic] short of sentence. I don't feel that is the proper way to handle this matter. I would like to be able to talk to the head Dr. and find out when I can start treatment." Docket 45-2 at 3.

Nonetheless, Briley now asserts that the request for administrative remedy implicitly incorporated concerns regarding his previous cell assignment. Briley argues that "[a] review of the evidence presented by Defendants illustrates that Briley never intended to separate his complaint that he contracted Hepatitis C as a result of his room assignment with S.S. with the failure of the Defendants to provide him adequate medical care." Docket 49 at 6-7. Aside from this bare assertion, however, Briley has not offered evidence to support his contention. To the contrary, Briley has admitted that he filed a request for administrative remedy "because he wanted treatment for his disease." Dockets 48 at ¶ 18; 50 at ¶ 15. Furthermore, Briley has not disputed defendants' assertion that Briley failed to exhaust administrative remedies with regard to his failure to protect claim. Instead, Briley notes that he "informed

12

his doctor at the prison that he believed he got Hepatitis from his former roommate . . . ." Docket 48 at ¶ 17.

Because notifying a doctor of an ongoing complaint does not equate to filing a request for administrative remedy, the request for administrative remedy on file does not explicitly address Briley's concerns regarding his previous cell assignment, and Briley has presented no evidence to show that Weber and Dooley had personal knowledge of Briley's cell assignment concerns, the court finds that Briley has failed to exhaust administrative remedies with regard to his failure to protect claim. For purposes of making this determination, it is not relevant that Briley did not "intend[] to bifurcate his claims during the administrative process." Docket 49 at 7. "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him." *Chelette v. Harris*, 229 F.3d 684, 699 (8th Cir. 2000). "The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Id.* Briley did not exhaust available administrative remedies, and defendants are therefore entitled to judgment as a matter of law on Briley's failure to protect claim.

## II.  Defendants Are Entitled to Summary Judgment on Briley's Deliberate Indifference Claim.

Briley did not specify in either his original or amended complaint whether he intended to sue defendants in their individual or official capacities.

*See* Dockets 1, 36. The Eighth Circuit "has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citations omitted); *see also Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (noting that a plaintiff should explicitly state whether he or she is suing a defendant in his or her individual capacity so as to put the defendant on "prompt notice of his or her potential personal liability"). "Absent such an express statement, the suit is construed as being against the defendants in their official capacity." *Outboard Marine*, 172 F.3d at 535. Accordingly, the court will analyze Briley's deliberate indifference claim as a claim against the defendants in their official capacities.

"To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted). "In a deprivation of medical care case, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs." *Id.* (citing *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995)). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would

14

easily recognize the necessity for a doctor's attention.' " *Coleman*, 114 F.3d at 784 (quoting *Camberos*, 73 F.3d at 176)). To establish deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Coleman*, 114 F.3d at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

In the instant case, it is undisputed that Briley suffers from a serious medical need. The issue, then, is whether defendants, in their official capacities, acted with deliberate indifference toward Briley's Hepatitis C by denying him drug therapy treatment. To impose § 1983 liability on a local government body,[10] a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The court finds that Briley has failed to make this showing.

While in the custody of the SDDOC, Briley has been seen repeatedly by medical professionals with regard to his Hepatitis C. On June 13, 2012, and June 19, 2012, Briley requested Hepatitis C testing, which testing occurred on June 26, 2012. Briley tested positive for Hepatitis C on June 26, 2012. On July 6, 2012, Correctional Health Services performed laboratory testing on

---

[10] A suit against a public official in his or her official capacity is actually a suit against the entity for which the public official is an agent. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).

Briley's liver and found that his liver enzymes were normal. By July 19, 2012, Briley was placed under a chronic care plan for his Hepatitis C, a plan that involves follow-up appointments at which medical professionals monitor Briley's condition, test his liver enzymes, and answer any questions he has concerning his condition. Moreover, Briley was educated about the motor transmission symptoms of Hepatitis C, the potential treatment options going forward, and the reasons he did not qualify for drug therapy treatment.

In determining that Briley did not qualify for drug therapy treatment, officials at SDSP adhered to the policy established by the South Dakota Department of Health, which incorporates an eligibility checklist for determining who is eligible for drug therapy treatment. The Department of Health's policy is to offer treatment only if: (1) the inmate has progressive permanent liver disease present on a liver biopsy; (2) the inmate has time remaining to be served greater than the usual treatment and follow-up period (usually 18 months); (3) the inmate is drug and alcohol free; and (4) the inmate has no other medical conditions (including recent or serious mental illnesses) that are contraindicated. Dockets 42 at ¶¶ 61–63; 46 at ¶¶ 10, 12, 16; 48 at ¶ 61–63.

Briley did not meet any of the prerequisites for drug therapy treatment—Briley's liver enzymes were not elevated; Briley had fewer than seven months remaining on his sentence; Briley had a history of substance

abuse; Briley was being treated for mental health conditions; and Briley had a history of noncompliance with prescribed treatments. Dockets 42 at ¶¶ 71, 75; 48 at ¶¶ 71, 75. Briley, therefore, was not denied medical treatment. Rather, in accordance with standard protocol, he was denied drug therapy treatment.

Briley's disagreement with his course of treatment does not amount to a constitutional deprivation. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment . . . ."); *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation."). This court has previously held that refusing to treat Hepatitis C with drug therapy does not amount to deliberate indifference. *Carlson v. Weber*, 2010 WL 3701359, at *6 (D.S.D. Sept. 4, 2010). Furthermore, the Eighth Circuit has found that denying drug therapy to prisoners with Hepatitis C who did not have significantly elevated liver function levels as required by the Minnesota Department of Health's Hepatitis C Treatment Eligibility Criteria did not amount to a constitutional deprivation. *Hines v. Anderson*, 547 F.3d 915, 918, 921 (8th Cir. 2008). The court therefore finds that the policy under which Briley was denied drug therapy treatment did not cause a deprivation of Briley's Eighth Amendment right to be free from cruel and unusual

punishment. Accordingly, defendants are entitled to judgment as a matter of law with regard to Briley's deliberate indifference claim.

## CONCLUSION

Briley failed to exhaust administrative remedies with regard to his failure to protect claim. With regard to his deliberate indifference claim, Briley failed to demonstrate that an official policy or widespread practice caused a deprivation of a constitutional right. Defendants are therefore entitled to summary judgment. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 40) is granted.

Dated June 10, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE